13-2316-ag
New York v. FERC

In the

# United States Court of Appeals
### For the Second Circuit

---

August Term, 2014

(Argued: November 20, 2014          Decided: April 22, 2015)

Docket No. 13-2316-ag

---

PEOPLE OF THE STATE OF NEW YORK and THE PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK,

*Petitioners*,

—v.—

FEDERAL ENERGY REGULATORY COMMISSION,

*Respondent*,

THE AMERICAN PUBLIC POWER ASSOCIATION (APPA); THE NATIONAL RURAL ELECTRIC COOPERATIVE ASSOCIATION (NRECA); THE TRANSMISSIONS ACCESS POLICY STUDY GROUP (TAPS); THE NATIONAL ASSOCIATION OF REGULATORY UTILITY COMMISSIONERS (NARUC); PUBLIC UTILITY DISTRICT NO. 1 OF SNOHOMISH COUNTY, WASHINGTON; and NORTH AMERICAN ELECTRIC RELIABILITY CORPORATION,

*Intervenors*.

---

Before:

KEARSE, JACOBS, and RAGGI, *Circuit Judges.*

Petition for review of final orders of the Federal Energy Regulatory Commission adopting standards and procedures for determining which power distribution facilities are subject to the agency's regulatory jurisdiction and which facilities fall within the statutory exception for "local distribution of electric energy." Petitioners contend that the standards and procedures are an unreasonable interpretation of the agency's statutory grant of jurisdiction. See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984). They further challenge the standards and procedures as arbitrary and capricious under the Administrative Procedure Act. See 5 U.S.C. § 706.

PETITION DENIED.

Judge JACOBS concurs in the judgment in a separate opinion.

JOHN C. GRAHAM, Assistant Counsel (Kimberly A. Harriman, General Counsel, *on the brief*), Public Service Commission of the State of New York, Albany, New York, *for Petitioners*.

CAROL J. BANTA, Senior Attorney (David L. Morenoff, General Counsel; Robert H. Solomon, Solicitor, *on the brief*), Federal Energy Regulatory Commission, Washington, D.C., *for Respondent*.

2

James Bradford Ramsay, General Counsel; Holly Rachel Smith, Assistant General Counsel, National Association of Regulatory Utility Commissioners, Washington, D.C., *for Intervenor National Association of Regulatory Utility Commissioners*.

Ellen M. Dunn, Sutherland Asbill & Brennan LLP, New York, New York, *for Intervenor North American Electric Reliability Corp*.

REENA RAGGI, *Circuit Judge*:

The State of New York and the Public Service Commission of the State of New York (collectively, "New York") petition this court for review of two final orders of the Federal Energy Regulatory Commission ("FERC"), insofar as the orders adopt standards and procedures for determining which power distribution facilities are subject to the agency's regulatory jurisdiction and which facilities fall within the statutory exception for local distribution of electric energy. See Revisions to Electric Reliability Organization Definition of Bulk Electric System, Order No. 773, 141 FERC ¶ 61,236 (2012), clarified and reh'g denied, Order No. 773-A, 143 FERC ¶ 61,053 (2013). New York contends that the standards and procedures are an unreasonable interpretation of the agency's statutory grant of jurisdiction. See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984). It further challenges the standards and

3

procedures as arbitrary and capricious under the Administrative Procedure Act. See 5 U.S.C. § 706. We conclude that these arguments are without merit and, therefore, deny the petition for review.

## I. Background

### A. The Governing Statute and Regulatory Regime

The Federal Power Act, as amended in 1935, see Pub. L. No. 74-333, tit. II, 49 Stat. 803, 838–54 (1935) (codified at 16 U.S.C. § 792 et seq.), grants the Federal Power Commission, and now its successor agency FERC, regulatory authority over interstate aspects of the nation's electric power system. See 16 U.S.C. § 824(a). Congress specifically excluded from this jurisdictional grant "facilities used in local distribution or only for the transmission of electric energy in intrastate commerce." Id. § 824(b)(1). Regulation of these exempted facilities is reserved to the states. See, e.g., New York v. FERC, 535 U.S. 1, 22 (2002); Connecticut Light & Power Co. v. Fed. Power Comm'n, 324 U.S. 515, 518 (1945). The statute does not define "facilities used in local distribution." Thus, from 1996 until the time of the challenged orders, FERC employed a seven-factor test

(set out in the margin[1]) to identify facilities falling within the statutory exemption from jurisdiction. See New York v. FERC, 535 U.S. at 23.

For many years, FERC exercised its statutory jurisdiction essentially as an economic regulator, overseeing the market for the sale of electricity in interstate commerce. See 16 U.S.C. § 824; see also Connecticut Light & Power Co. v. Fed. Power Comm'n, 324 U.S. at 524 (observing that purpose of Federal Power Act "was primarily to regulate the rates and charges of the interstate energy"). After

---

[1] The seven indicators of local jurisdiction are as follows:

(1) Local distribution facilities are normally in close proximity to retail customers.
(2) Local distribution facilities are primarily radial in character.
(3) Power flows into local distribution systems; it rarely, if ever, flows out.
(4) When power enters a local distribution system, it is not reconsigned or transported on to some other market.
(5) Power entering a local distribution system is consumed in a comparatively restricted geographical area.
(6) Meters are based at the transmission/local distribution interface to measure flows into the local distribution system.
(7) Local distribution systems will be of reduced voltage.

Promoting Wholesale Competition Through Open Access Non-Discriminatory Transmission Services by Public Utilities and Recovery of Stranded Costs by Public Utilities and Transmitting Utilities, Order No. 888, FERC Stats. & Regs. ¶ 31,036, 61 Fed. Reg. 21,540, 21,620 (1996). The agency also signaled a willingness to consider state regulators' recommendations as to where to draw this jurisdictional line. See id. at 21,625–27.

the northeast United States experienced a large-scale blackout in the summer of 2003, however, Congress expanded FERC's regulatory authority by enacting the Electricity Modernization Act of 2005, Pub. L. No. 109-58, tit. XII, 119 Stat. 594, 941–86 (2005). That Act authorizes FERC to adopt and enforce mandatory technical reliability standards for facilities that make up the national energy grid. See 16 U.S.C. § 824*o* (authorizing FERC to impose reliability standards on facilities that comprise "bulk-power system," defined to include "facilities and control systems necessary for operating an interconnected electric energy transmission network"). The Act does not require FERC to develop these standards for itself. Rather, it directs FERC to certify an outside organization to develop such standards subject to agency approval. See 16 U.S.C. § 824*o*(c), (d). To fill this role, FERC certified North American Electric Reliability Corporation ("NERC"), an organization that had previously developed a series of voluntary technical standards for the industry.[2]

At the same time, however, the statute maintains the Federal Power Act's jurisdictional exception by specifying that the bulk-power system "does not

_____

[2] NERC now intervenes in this action and has filed a brief in support of FERC. Intervenor National Association of Regulatory Utility Commissioners has filed a brief in support of petitioners' challenge to the FERC orders at issue.

include facilities used in the local distribution of electric energy." Id. § 824*o*(a)(1). Again, the statute neither defines "facilities used in . . . local distribution" nor instructs as to how such facilities should be identified.

## B.    Development of the Challenged Orders

In 2007, FERC adopted a number of reliability standards proposed by NERC.  See Mandatory Reliability Standards for the Bulk-Power System, Order No. 693, 118 FERC ¶ 61,218 (2007).  In so doing, however, FERC expressed concern that NERC's proposed method for identifying facilities subject to the new standards—which involved deferring to the determinations of various regional councils—left gaps in coverage that would defeat the Electricity Modernization Act's goal of ensuring a stable and reliable nationwide power grid.  See id. ¶ 61,218, at ¶¶ 75–81.  FERC therefore directed NERC to revise its proposed definition of the bulk electric system[3] to eliminate regional discretion and, instead, to establish a uniform set of rules that include an operating voltage threshold, specific facility configurations to be included or excluded from the bulk electric system notwithstanding their operating voltage, and a process for

---

[3] "Bulk electric system" is an industry term of art that differs slightly from the statutory "bulk-power system," but not in ways relevant to this opinion.  See Order No. 693, 118 FERC ¶ 61,218, at ¶ 76.

facilities to seek exemptions from the regulations. See Revision to Electric Reliability Organization Definition of Bulk Electric System, Order No. 743, 133 FERC ¶ 61,150, at ¶ 30 (2010). Various entities, including New York, argued that FERC's directive would result in the agency exceeding its regulatory jurisdiction by presumptively subjecting local distribution facilities operating above a default voltage threshold to federal regulation. FERC rejected this argument and proceeded with its directive, clarifying that NERC would also develop criteria for determining which facilities operating above the default threshold might nevertheless qualify for the local distribution exclusion, and that FERC itself would conduct a factual inquiry on exemption where specified criteria failed to yield a determinative answer as to whether a facility was engaged in local distribution. See Revision to Electric Reliability Organization Definition of Bulk Electric System, Order No. 743-A, 134 FERC ¶ 61,210, at ¶¶ 18–25 (2011).

In early 2012, NERC submitted its new proposed standards and procedures for identifying facilities within the bulk electric system, which FERC proceeded to publish for industry and public comment. See Revision to Electric Reliability Organization Definition of Bulk Electric System and Rules of Procedure, Notice of Proposed Rulemaking, 139 FERC ¶ 61,247 (2012).

Approximately 60 persons and entities commented, including New York, which again voiced objections. Nevertheless, in December 2012, FERC issued Order 773, the first of the orders here at issue. That order essentially adopts NERC's proposed standards and procedures for identifying power transmission facilities that are part of the bulk electric system subject to federal regulation. See Order No. 773, 141 FERC ¶ 61,236, at ¶¶ 1–4. These standards and procedures may be grouped into three categories.

First, any facility with an operating voltage at or exceeding 100 kilovolts ("kV") is presumed to be part of the nation's bulk electric system, while any facility with a lower operating voltage is presumed to be engaged in local distribution. See id. ¶ 61,236, at ¶ 67 (observing that "this threshold will remove from the bulk electric system the vast majority of facilities that are used in local distribution, which tend to be operated at lower, sub-100 kV voltages").

Second, notwithstanding these presumptions, the order specifies five facility configurations that are to be included in the bulk electric system, and four configurations that are to be excluded therefrom, regardless of their operating voltages. See id. One exclusion in particular, "E3," identifies facilities that operate at over 100 kV but, nevertheless, constitute a local network. The

descriptions of the inclusions and exclusions, which are detailed and quite

technical, are reproduced in the margin.[4]

---

[4] The five inclusions are as follows:

> I1 – Transformers with the primary terminal and at least one secondary terminal operated at 100 kV or higher unless excluded under Exclusion E1 or E3.

> I2 – Generating resource(s) with gross individual nameplate rating greater than 20 MVA or gross plant/facility aggregate nameplate rating greater than 75 MVA including the generator terminals through the high-side of the step-up transformer(s) connected at a voltage of 100 kV or above.

> I3 – Blackstart Resources identified in the Transmission Operator's restoration plan.

> I4 – Dispersed power producing resources with aggregate capacity greater than 75 MVA (gross aggregate nameplate rating) utilizing a system designed primarily for aggregating capacity, connected at a common point at a voltage of 100 kV or above.

> I5 – Static or dynamic devices (excluding generators) dedicated to supplying or absorbing Reactive Power that are connected at 100 kV or higher, or through a dedicated transformer with a high-side voltage of 100 kV or higher, or through a transformer that is designated in Inclusion I1.

Order No. 773, 141 FERC ¶ 61,236, at ¶ 13.

The four exclusions are as follows:

E1 – Radial systems:  A group of contiguous transmission Elements that emanates from a single point of connection of 100 kV or higher and:

    a)  Only serves Load.  Or,

    b)  Only includes generation resources, not identified in Inclusion I3, with an aggregate capacity less than or equal to 75 MVA (gross nameplate rating).  Or,

    c)  Where the radial system serves Load and includes generation resources, not identified in Inclusion I3, with an aggregate capacity of non-retail generation less than or equal to 75 MVA (gross nameplate rating).

Note – A normally open switching device between radial systems, as depicted on prints or one-line diagrams for example, does not affect this exclusion.

E2 – A generating unit or multiple generating units on the customer's side of the retail meter that serve all or part of the retail Load with electric energy if:  (i) the net capacity provided to the BES does not exceed 75 MVA; and (ii) standby, back-up, and maintenance power services are provided to the generating unit or multiple generating units or to the retail Load by a Balancing Authority, or provided pursuant to a binding obligation with a Generator Owner or Generator Operator, or under terms approved by the applicable regulatory authority.

E3 – Local networks (LN):  A group of contiguous transmission Elements operated at or above 100 kV but less than 300 kV that distribute power to Load rather than transfer bulk-power across the interconnected system.  LN's emanate from multiple points of connection at 100 kV or higher to improve the level of service to retail customer Load and not to accommodate bulk-power transfer across the interconnected system.  The LN is characterized by all of the following:

11

Third, even if, at the first two steps of analysis, a facility appears to come within FERC's regulatory jurisdiction, the order affords two avenues for individualized review. One permits a facility falling within federal jurisdiction to seek a technical exemption from the reliability requirements, a case-by-case decision initially made by NERC but appealable on application to FERC. See id. ¶ 61,236, at ¶¶ 27, 238, 269. Separate and independent from that process, a facility that thinks it is engaged in local distribution, and that is not already

a) Limits on connected generation: The LN and its underlying Elements do not include generation resources identified in Inclusion I3 and do not have an aggregate capacity of non-retail generation greater than 75 MVA (gross nameplate rating);

b) Power flows only into the LN and the LN does not transfer energy originating outside the LN for delivery through the LN; and

c) Not part of a Flowgate or transfer path: The LN does not contain a monitored Facility of a permanent Flowgate in the Eastern Interconnection, a major transfer path within the Western Interconnection, or a comparable monitored Facility in the ERCOT or Quebec Interconnections, and is not a monitored Facility included in an Interconnection Reliability Operating Limit (IROL).

E4 – Reactive Power devices owned and operated by the retail customer solely for its own use.

Id. ¶ 61,236, at ¶ 18.

excluded from FERC jurisdiction at the first two steps of analysis, can petition FERC for an individualized determination of jurisdiction. That determination is made by reference to all relevant factors, including those set forth in the earlier seven-factor test. Further, notice-and-comment procedures are employed in making the decision, thereby allowing all interested parties to be heard. See id. ¶ 61,236, at ¶¶ 66, 69–73.

Challenged Order 773 is subject to a two-year "grace period," affording parties time to plan for and implement the reliability requirements, to request technical exemptions therefrom, and to petition for individualized jurisdictional review. A subsequent order has extended that grace period to July 1, 2016. See Revisions to Electric Reliability Organization Definition of Bulk Electric System and Rules of Procedure, 143 FERC ¶ 61,231 (2013).

New York unsuccessfully sought rehearing on Order 773, see Order No. 773-A, 143 FERC ¶ 61,053, whereupon it timely filed the instant petition for review of both Orders 773 and 773-A.

II.    **Discussion**

New York's petition for review asserts two claims. First, New York argues that the challenged orders unreasonably construe FERC's statutory jurisdiction

13

by (a) using an operating voltage threshold that sweeps into the national bulk electric system some exempt facilities engaged in local distribution; and (b) employing impermissible procedures to identify exempt facilities only after already exercising jurisdiction, while then requiring facilities to shoulder the burden of demonstrating their exemption from FERC jurisdiction.  See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837.  Second, New York asserts that the challenged standards and procedures are arbitrary and capricious under the Administrative Procedure Act.  See 5 U.S.C. § 706.

A.      The *Chevron* Challenge to FERC's Interpretation of its Jurisdiction

As New York recognizes, because it challenges FERC's interpretation of jurisdiction conferred by statutes that the agency is charged with administering, our review properly follows the two-step analysis outlined in Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837.  See City of Arlington, Tex. v. FCC, 133 S. Ct. 1863, 1868–69 (2013) (holding Chevron analysis applicable to agency's determination of its own statutory jurisdiction).[5]

_____

[5] Judge Jacobs submits that Chevron review is unwarranted because "New York's challenge is not that the 100-kV threshold is a definition of 'local distribution.'"  Jacobs, J., Op. Concurring in Judgment, post at **[2]** (emphasis in original).  The challenged operating voltage threshold, however, is part of a

At step one, we look to whether "Congress has directly spoken to the precise question at issue" because, if "the intent of Congress is clear, that is the end of the matter." Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467

definition of "bulk electric system," as stated in the first paragraph of the challenged order:

> [T]he Commission approves modifications to the currently-effective <u>definition</u> of 'bulk electric system' . . . . The Commission finds that the modified <u>definition</u> of 'bulk electric system' improves upon the currently-effective definition by establishing a bright-line threshold that includes all facilities operated at or above 100 kV and removing language that allows for broad regional discretion. The modified <u>definition</u> also provides improved clarity by identifying specific categories of facilities and configurations as inclusions and exclusions to the <u>definition</u> of 'bulk electric system.'

Order No. 773, 141 FERC ¶ 61,236, at ¶ 1 (emphases added). Because the "bulk electric system" cannot, by statute, include "facilities used in . . . local distribution," 16 U.S.C. § 824*o*(a)(1), the definition given to the former term necessarily draws the boundary of the latter. Indeed, New York frames the question before this court as "[w]hether FERC has adopted a definition of the 'bulk electric system' that sweeps in components 'used in the local distribution of electric energy' which are expressly excluded from its jurisdiction by 16 U.S.C. § 824*o*(a)(1)." Pet'r's Br. 1. And elsewhere, New York <u>explicitly</u> requests <u>Chevron</u> review: "This Court should review FERC's interpretation of its electric power transmission reliability jurisdiction under the standards set forth in <u>Chevron</u> . . . ." <u>Id.</u> at 13. While Judge Jacobs observes that New York cites <u>Chevron</u> only twice in its principal brief, <u>Vermont Yankee Nuclear Power Corp. v. Natural Resource Defense Council, Inc.</u>, 435 U.S. 519 (1978)—the source for his preferred standard of review—is cited not at all. Nevertheless, because Judge Jacobs concludes that <u>Vermont Yankee</u> also supports denial of the petition, the panel judgment is unanimous.

15

U.S. at 842; accord United States v. Home Concrete & Supply, LLC, 132 S. Ct. 1836, 1843–44 (2012) (holding that judicial identification of clear congressional intent in statutory text precludes agency from adopting different interpretation); New York ex rel. N.Y. State Office of Children & Family Servs. v. U.S. Dep't of Health & Human Servs., 556 F.3d 90, 92, 97 (2d Cir. 2009) (same). New York does not—and cannot—contend that its challenge to FERC's interpretation of its statutory jurisdiction can be resolved at this step of analysis. As already noted, the Federal Power Act does not define "facilities used in local distribution or only for the transmission of electric energy in intrastate commerce." 16 U.S.C. § 824(b)(1). Nor does the Electricity Modernization Act clearly identify transmission facilities "used in the local distribution of electric energy." Id. § 824*o*(a)(1).

Where statutes are thus "silent or ambiguous with respect to the specific issue" in dispute, a court must proceed to step two of Chevron analysis. Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. at 843. At that step, we deem Congress to have delegated the resolution of statutory ambiguity to the administering agency, so that our judicial task is simply to determine "whether the agency's answer is based on a permissible construction of the

16

statute." Id.; accord City of Arlington, Tex. v. FCC, 133 S. Ct. at 1868 (stating that question court faces when confronted with challenge to "agency's interpretation of a statute it administers is always, simply, whether the agency has stayed within the bounds of its statutory authority" (emphasis omitted)); Torres v. Holder, 764 F.3d 152, 158 (2d Cir. 2014) (approving Board of Immigration Appeals' interpretation of Immigration and Nationality Act). That inquiry is deferential, asking only whether the agency's interpretation is "reasonable," while "respect[ing] legitimate policy choices" made by the agency. Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. at 843–44, 866; accord National Cable & Telecomms. Ass'n v. Brand X Internet Servs., 545 U.S. 967, 986 (2005) (describing Chevron step two as asking whether agency's construction is a "reasonable policy choice" (internal quotation marks omitted)); McNamee v. Dep't of the Treasury, 488 F.3d 100, 105 (2d Cir. 2007) (same); see also Transmission Access Policy Study Grp. v. FERC, 225 F.3d 667, 696 (D.C. Cir. 2000) (according Chevron deference to FERC's interpretation of Federal Power Act's exception for "facilities used in local distribution," 16 U.S.C. § 824(b)(1), because phrase is undefined and ambiguous), aff'd sub nom. New York v. FERC, 535 U.S. 1.

### 1.    The 100 kV Standard

New York contends that adoption of a 100 kV threshold to define the bulk electric system is an unreasonable construction of FERC's statutory jurisdiction because the system, so defined, can include facilities engaged in local distribution, which are exempt from FERC jurisdiction. The argument might persuade if FERC treated operation at 100 kV or greater as determinative of jurisdiction. In fact, it does not.

As an initial matter, FERC's choice of the 100 kV threshold is grounded in NERC findings that "the vast majority of 100 kV and above facilities" operate in interconnected transmission networks within the national power grid. See Order No. 773, 141 FERC ¶ 61,236, at ¶ 41. New York does not challenge this factual finding. Further, the 100 kV threshold is used only to set a preliminary jurisdictional boundary, which is always subject to generally applicable adjustments and, upon request, to individualized ones. The nine generally applicable adjustments, see supra note 4, are based on pre-defined inclusions and exclusions from the bulk electric system without regard to the operating voltage threshold. The two individualized adjustments (1) afford facilities subject to federal jurisdiction technical exemption from reliability requirements, or—more

18

relevant here—(2) provide for FERC to conduct a holistic review of whether a particular facility is used in local distribution so as to fall outside federal jurisdiction. In sum, when the 100 kV threshold is properly understood in this context—as a preliminary, not determinative, factor—it does not signal FERC's unreasonable construction of its regulatory jurisdiction to extend to local distribution facilities operating above a 100 kV threshold.

Nor is a different conclusion warranted by New York's assertion that FERC established the 100 kV threshold more to further its policy interest in uniform reliability standards than accurately to delineate between facilities subject to and exempt from its regulatory jurisdiction. Whatever policy interests may have animated FERC's challenged orders, our singular concern on Chevron review is whether FERC acted unreasonably in employing a 100 kV threshold to clarify an otherwise ambiguous statutory distinction between power facilities over which it does and does not have regulatory jurisdiction. Because there is record support for the selection of a 100 kV threshold as an initial standard, and because that standard is not determinative but subject to general and individualized adjustments, we conclude that FERC did not act unreasonably in

including such a threshold within a larger scheme of standards and procedures for clarifying its statutory jurisdiction.

### 2.    Procedural Challenges

New York argues that FERC's unreasonable construction of its statutory jurisdiction is further evident in the defective procedures it proposes to use to distinguish facilities subject to and exempt from that jurisdiction. New York carries a heavy burden in making this argument because judicial review of the procedure an agency fashions to discharge its statutory duties is generally deferential. See Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc., 435 U.S. 519, 543–44 (1978) ("Absent constitutional constraints or extremely compelling circumstances the administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties." (internal quotation marks omitted)).

Here, New York faults the challenged orders for not requiring an express factual finding that a given facility is not used in local distribution as a precondition to the exercise of federal jurisdiction. It contends that the orders also impermissibly require facilities to shoulder the burden of proving their

20

exemption from federal regulatory jurisdiction. New York further complains that the orders provide for only facilities—not state regulators—to petition for individualized review of jurisdiction. Intervenor National Association of Regulatory Utility Commissioners ("NARUC") adds that FERC unreasonably construes its jurisdiction in requiring a facility to apply to NERC for a technical exemption before petitioning FERC for an individualized assessment of jurisdiction. None of these arguments persuades.

Before discussing each argument in turn, we note New York's general reliance on two cases to challenge Order 773's procedural structure: Connecticut Light & Power Co. v. Federal Power Commission, 324 U.S. 515, and Federal Power Commission v. Florida Power & Light Co., 404 U.S. 453 (1972). Connecticut Light & Power emphasizes the need for "explicit" agency findings excluding the local distribution exception to federal regulatory jurisdiction so as to "give[] assurance that the bounds of federal jurisdiction have been accurately understood and fully respected." 324 U.S. at 532. Not only had the agency in that case failed to make any such findings, but also, the Supreme Court "doubt[ed] whether by application of the statute as herein construed it could have done so." Id.

In <u>Florida Power & Light</u>, the Supreme Court held that regulatory jurisdiction under the Federal Power Act can be exercised "only if there is substantial evidentiary support for the Commission's conclusion" that interstate transfer of electricity had occurred. 404 U.S. at 458. The Court ruled that persuasive expert opinion supported by empirical evidence, even if not rising to the level of certainty, can satisfy this requirement. <u>See</u> <u>id.</u> at 459, 463–67.

These propositions—that in the face of a statutory exception, FERC must support its exercise of jurisdiction by explicit findings, and that those findings must be based on substantial evidence—undoubtedly control here. <u>See</u> 16 U.S.C. § 824(b) ("The Commission . . . shall not have jurisdiction . . . over facilities used in local distribution . . . ."); <u>id.</u> § 825*l*(b) ("The finding of the Commission as to the facts, if supported by substantial evidence, shall be conclusive."). But New York errs in construing the challenged orders to allow FERC to exercise jurisdiction without complying with these mandates.

<u>First</u>, the orders do not provide for FERC to exercise regulatory jurisdiction <u>before</u> determining whether a facility falls within the statute's local distribution exception. Rather, the orders establish a procedure for the factfinding requisite

22

to the exercise of such jurisdiction.[6]  Pursuant thereto, the threshold finding of 100 kV operation is followed by further factfinding as to five specified inclusions and four exclusions.  Moreover, the factfinding process continues still further if a facility not found within the local distribution exception after operating voltage and configuration consideration petitions FERC for individualized review.  Only if this assessment, subject to the full notice-and-comment process, reveals that the facility is part of the bulk electric system and not within the local distribution exception, will federal regulatory jurisdiction be exercised.

In sum, the challenged orders do not authorize FERC to regulate any facility in advance of a factually supported, explicit determination of jurisdiction.[7]

---

[6] The record is not clear as to whether FERC conducts this factfinding proactively for every facility or, instead, undertakes the process only at the time of an enforcement action.  We do not pursue that question further on the record before us.  We conclude simply that the challenged orders, on their face, do not relieve the agency of its obligation to undertake the factfinding necessary to exercise jurisdiction.

[7] New York professes concern that the two-year grace period operates as a deadline beyond which facilities will have waived their right to petition for further review of jurisdiction.  The argument finds no support in the challenged orders, which do not prevent a facility from petitioning for further review after the grace period concludes or from raising lack of jurisdiction as a defense in an

Second, contrary to New York's assertion, the fact that a facility must petition for an individualized assessment of jurisdiction under the challenged orders does not mean that the facility bears the burden of proving that it falls within an exception to jurisdiction. Certainly, no language in the orders imposes such a burden on facilities, and FERC disclaims it in its brief to this court. See Resp't's Br. 36 ("[C]ontrary to New York's argument . . . , the Commission has not impermissibly shifted the burden of determining its jurisdiction."). Accordingly, we identify no unreasonable construction of FERC jurisdiction in the petitioning process.[8]

---

enforcement proceeding. Indeed, at oral argument, FERC specifically disavowed a contrary reading of the orders. See Oral Arg. Tr. at 12:2–25. We do not here consider what, if any, temporal limitations might reasonably be placed on petitions for further review where the operating voltage threshold and inclusion/exclusion assessments demonstrate jurisdiction. We conclude only that there is no merit in New York's argument that the challenged orders permit FERC to exercise regulatory jurisdiction without first determining whether a facility falls within the statutory exception for local distribution.

[8] We are not convinced that precedent forecloses federal agencies from requiring proponents of exceptions to federal regulatory jurisdiction to demonstrate their entitlement to the exception. See generally Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc., 435 U.S. at 543–44. We do not pursue the point further here because, as noted in text, FERC denies that facilities petitioning for individualized assessments bear the burden of demonstrating that they fall within the local distribution exception to jurisdiction.

Third, New York complains that FERC permits only facility owners, not state regulators acting on behalf of a facility, to petition for an individualized assessment of jurisdiction. This particular argument is not properly before us because New York did not raise it before FERC. See 16 U.S.C. § 825*l*(b) ("No objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in the application for rehearing unless there is reasonable ground for failure to do so."). In its petition for rehearing of Order 773, New York argued that FERC should not be excluding state regulators from the local distribution determination process. In denying rehearing, FERC clarified that the challenged orders effect no such exclusion. To the contrary, because a requested individualized assessment of jurisdiction is made via the notice-and-comment process, all interested parties—including state regulators—are afforded the opportunity to be heard. See Order No. 773-A, 143 FERC ¶ 61,053, at ¶¶ 98–105. New York never argued that FERC was obligated to allow state regulators to file petitions for individual jurisdictional determinations, rather than merely to allow them to participate in such proceedings once initiated by a facility, and offers no "reasonable ground for [its] failure to do so." 16 U.S.C. § 825*l*(b). Accordingly, the statutory

25

exhaustion requirement precludes us from considering that argument for the first time here.

Fourth, intervenor NARUC's procedural complaint that FERC requires facilities to apply to NERC for a technical exemption before they can petition FERC for an individualized determination of jurisdiction merits little discussion. As FERC clarified in denying rehearing of Order 773, the filing of a jurisdictional petition is not conditioned on a prior filing for a technical exemption. Rather, the two processes are independent avenues by which a facility may seek different forms of relief. NERC technical exemptions excuse certain facilities from compliance with reliability standards even though they fall within FERC's regulatory jurisdiction. By contrast, a petition for an individualized jurisdictional determination ensures that local distribution facilities are properly excluded from FERC's regulatory jurisdiction despite preliminary factfinding placing them within the bulk electric system. See Order No. 773-A, 143 FERC ¶ 61,053, at ¶¶ 83–94. Thus, the challenged orders do not impose unwarranted procedural obligations as preconditions to a facility petitioning for individualized review of jurisdiction.

Accordingly, we identify no merit in New York's and intervenor NARUC's arguments that procedures established by the challenged orders indicate FERC's unreasonable construction of the scope of its regulatory jurisdiction over electric power distribution facilities.

B.      Arbitrary and Capricious Action

Independent of our Chevron review of an agency's interpretation of a statute it administers, the Administrative Procedure Act requires us to set aside agency action that is "arbitrary" or "capricious."  5 U.S.C. § 706(2)(A); see Green Island Power Auth. v. FERC, 577 F.3d 148, 158 (2d Cir. 2009) (reviewing FERC actions under § 706(2)(A) standard).  The mere fact that an agency rescinds one rule and adopts another is not arbitrary or capricious where the new rule is supported by reasoned decisionmaking and there are no circumstances requiring further explanation, such as contradictory findings of fact or substantial reliance interests on the old rule.  See FCC v. Fox Television Stations, Inc., 556 U.S. 502, 515–16 (2009); accord Mei Fun Wong v. Holder, 633 F.3d 64, 78 (2d Cir. 2011).  In making these determinations, we may not ourselves re-weigh the evidence or substitute our policy judgment for that of the agency.  See Islander E. Pipeline

27

Co. v. McCarthy, 525 F.3d 141, 150–51 (2d Cir. 2008). Indeed, FERC's factfinding

is conclusive if supported by substantial evidence. See 16 U.S.C. § 825*l*(b).

The Supreme Court has explained that "[s]ubstantial evidence is more

than a mere scintilla. It means such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." Universal Camera Corp. v.

NLRB, 340 U.S. 474, 477 (1951) (internal quotation marks omitted); accord NLRB

v. G & T Terminal Packaging Co., 246 F.3d 103, 114 (2d Cir. 2001); see also DTE

Energy Co. v. FERC, 394 F.3d 954, 962 (D.C. Cir. 2005) (citing Universal Camera

standard in denying petition for review of FERC determination that facilities

were subject to federal jurisdiction). In making such a determination, we review

the record in its entirety, considering evidence opposing, as well as supporting,

the agency's challenged action. We recognize, however, that the agency is

"equipped or informed by experience to deal with a specialized field of

knowledge"—here, the science and economics of transmitting electrical power—

and that its "findings within that field carry the authority of an expertness which

courts do not possess and therefore must respect." Universal Camera Corp. v.

NLRB, 340 U.S. at 488; accord NLRB v. G & T Terminal Packaging Co., 246 F.3d

at 114. Thus, we may not displace an agency's "choice between two fairly

28

conflicting views, even though [we] would justifiably have made a different choice had the matter been before [us] de novo." Universal Camera Corp. v. NLRB, 340 U.S. at 488. Rather, "reversal based upon a factual question will only be warranted if, after looking at the record as a whole, we are left with the impression that no rational trier of fact could reach the conclusion drawn by" the agency. NLRB v. Katz's Delicatessen of Houston St., Inc., 80 F.3d 755, 763 (2d Cir. 1996) (internal quotation marks omitted); accord NLRB v. G & T Terminal Packaging Co., 246 F.3d at 114. That is not this case.

The record amply demonstrates the serious consideration FERC and its designated agent, NERC, gave over a period of several years to the standards and procedures that would allow it objectively and effectively to identify facilities within the nation's bulk-power system while respecting the jurisdictional exception created by Congress for local distribution facilities. During that time, FERC amassed and considered an extensive array of factual material, as well as scores of comments submitted by interested parties in response to the agency's published preliminary proposals. The agency provided reasoned explanations, spanning hundreds of pages, for adopting the standards

and procedures here at issue in lieu of its former rule. See Order No. 773, 141 FERC ¶ 61,236; Order No. 773-A, 143 FERC ¶ 61,053.

Thus, the factual record and the agency's industry expertise permitted FERC to conclude that facilities operating above a 100 kV threshold are generally part of the bulk system's interconnected transmission networks and are critical in maintaining the reliable functionality of the system as a whole. See Order No. 773-A, 143 FERC ¶ 61,053, at ¶ 25 (finding that "failure of 100–200 kV facilities has caused cascading outages that would have been minimized or prevented" by compliance with proposed reliability standards). The same record and expertise supported FERC's determination that a 100 kV threshold, together with detailed predefined inclusions and exclusions, would effectively identify facilities comprising the bulk system while ensuring that "most local distribution facilities" were excluded from regulatory jurisdiction as statutorily prescribed. Order No. 773, 141 FERC ¶ 61,236, at ¶ 67.

In urging otherwise, New York argues that FERC's prior use of a seven-factor test concedes that local distribution determinations are fact sensitive and cannot be made on the basis of categorical rules. The point merits little discussion because, as already observed, FERC did not abandon individualized

30

factfinding in the challenged orders. Rather, after determining that an operating voltage threshold together with five prescribed inclusions and four exclusions will accurately delineate its jurisdiction in most cases, it has adopted those criteria simply as default rules applicable unless a facility requests an individualized determination. In fact, the operating voltage threshold and prescribed inclusions and exclusions appear to consider many of the same factual circumstances as does the seven-factor test (e.g., reduced voltage, radial configuration, and direction of power flow), although with more specificity. See supra notes 1, 4. Nevertheless, upon request for an individualized determination, FERC will employ the full notice-and-comment process to consider not only the seven factors previously employed to determine local distribution, but any factor relevant to a jurisdictional determination. This hardly reflects arbitrary and capricious action.

III.   **Conclusion**

To summarize, we conclude that the standards and procedures established in challenged FERC Orders 773 and 773-A both (1) reasonably interpret the agency's regulatory jurisdiction under the Federal Power Act as amended by the Electricity Modernization Act of 2005 and, thus, satisfy the standard of judicial

31

review under <u>Chevron, U.S.A., Inc. v. Natural Resource Defense Council, Inc.,</u> 467 U.S. 837; and (2) are not arbitrary and capricious but, rather, are supported by sufficient explanation and substantial evidence as required by the Administrative Procedure Act.

We have considered New York's remaining arguments and have found them to be without merit.  Accordingly, the petition for review of FERC Orders 773 and 773-A is DENIED.

DENNIS JACOBS, <u>Circuit Judge</u>, concurring in the judgment:

I concur in the judgment, but would deny the petition on a related ground.

If New York were challenging how FERC defines the statutory terms "local distribution" or "bulk-power system," I would agree with the majority that the challenged regulations must be upheld under <u>Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837 (1984). New York is not advancing a definitional challenge, however. Instead, it is making a *procedural* argument: that FERC cannot use a 100-kV threshold[1] as a good (but imperfect) proxy for classifying local distribution facilities because FERC must conclusively resolve "jurisdictional" issues before exercising regulatory authority.[2]

I would uphold the regulations on settled principles: (I) an agency is entitled to great deference when formulating "rules of procedure" and "methods of inquiry," <u>Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.</u>, 435 U.S. 519, 543 (1978); and (II) that deference is not diminished simply

---

[1]   I use the term "100-kV threshold" to refer to that threshold as modified by the various inclusions and exclusions.

[2]   Like the majority, I use the term "New York" to refer collectively to the petitioners.

because the agency's procedures bear on issues of jurisdictional significance, <u>City of Arlington, Tex. v. FCC</u>, 133 S. Ct. 1863, 1874 (2013).

## I

The majority resolves this case as a matter chiefly of statutory construction, but New York's challenge is not that the 100-kV threshold is a *definition* of "local distribution."  <u>See</u> Maj. Op. 14-20.  Nowhere in its briefs does New York make a <u>Chevron</u> argument.[3]  The <u>Chevron</u> argument is expressly disavowed: "Thus, the problem is not whether FERC can lawfully interpret a term."  Petitioners' Reply Br. 4.

New York's argument is surely procedural.  The parties agree that: (1) the 100-kV threshold filters out most (but not all) local distribution facilities, <u>see</u> Oral Arg. Tr. 3:11-16, 7:3-7, 14:21-15:1; (2) the seven-factor test (either alone or in conjunction with additional considerations) adequately identifies local

---

[3]   In the course of briefing, New York cites <u>Chevron</u> only twice: once in its general recitation of the standards that govern agency action, <u>see</u> Petitioners' Opening Br. 13, and once when characterizing one of FERC's arguments, <u>see</u> Petitioners' Reply Br. 3.  New York does not address either step of the <u>Chevron</u> inquiry: (1) whether Congress has clearly defined "local distribution" or (2) whether FERC has advanced an interpretation that is *substantively* unreasonable. <u>See Chevron</u>, 467 U.S. at 842.

2

distribution facilities, id. 2:20-25, 19:11-17, 20:10-17; and (3) local distribution

facilities not filtered out by the 100-kV threshold can request individualized

adjudication applying the seven factors, id. 3:15-16, 18:2-14, 19:11-17.

New York's objection is to the timing of these steps, and runs as follows:

Because the 100-kV threshold is an imperfect filter, some local distribution

facilities will become subject to FERC's reliability regulations. And while those

facilities may petition for individualized adjudication, some may choose not to.

And as to that subset of facilities, FERC would be exercising its regulatory

authority in excess of its jurisdiction.

That argument fails:

> Absent constitutional constraints or extremely compelling
> circumstances the administrative agencies should be free to
> fashion their own rules of procedure and to pursue methods
> of inquiry capable of permitting them to discharge their
> multitudinous duties.

Vermont Yankee, 435 U.S. at 543 (citation and internal quotation marks omitted).

The 100-kV threshold functions as a "rule[] of procedure" and a "method[] of

inquiry," filtering out facilities very likely to qualify as local distribution facilities

(i.e., those below the threshold), and allowing FERC to concentrate its regulatory

efforts on those facilities much less likely to qualify as local distribution facilities

3

(i.e., those above the threshold).  Without some such sorting mechanism, FERC

would have to determine the status of *every* facility individually, even those that

fall clearly on one side or the other of the divide.

New York has identified no "constitutional constraints or extremely

compelling circumstances" that would warrant imposing such a (wasteful)

procedure.  Vermont Yankee, 435 U.S. at 543.  "An agency enjoys broad

discretion in determining how best to handle related, yet discrete, issues in terms

of procedures and priorities."  Mobil Oil Exploration & Producing Se. Inc. v.

United Distribution Cos., 498 U.S. 211, 230 (1991) (citations omitted).  Local

distribution facilities that generate more than 100 kV (or fall within one of the

inclusions) may have an interest in avoiding regulation by FERC; but such

interest is adequately protected by the opportunity to seek individualized

adjudication *after* the application of the 100-kV threshold but *before* the imposition

of any substantive regulations.[4]

---

[4]    New York argues that the challenged regulations shift the burden of
disproving FERC's jurisdiction onto facilities.  See Petitioners' Opening Br. 18.
But as the majority correctly points out, New York cites no language in the
regulations that shifts the evidentiary burden in this way.  See Maj. Op. 24.  The
only "burden" placed on facilities is to initiate the individualized adjudication
process.  That "burden" is distinct from the *evidentiary* burden of proof that
would apply in each adjudication.  FERC represents that, under its procedures, it

New York suggests that the deference owed to FERC's procedures under Vermont Yankee is diminished because the challenged regulations bear on the exercise of FERC's jurisdiction. See Petitioners' Reply Br. 4. Because "jurisdictional" facts determine FERC's ability to exercise regulatory authority in the first place, New York argues, such facts must be adjudicated case by case.

As the Supreme Court explained in City of Arlington, the seeming distinction between "jurisdictional" and "nonjurisdictional" challenges to agency action is a "mirage." 133 S. Ct. at 1868. While a "*court's* power to decide a case is independent of whether its decision is correct," the same is not true for agencies. Id. at 1869 (emphasis added). For agencies, both the "*power* to act and *how* they are to act is authoritatively prescribed by Congress, so that when they act improperly, no less than when they act beyond their jurisdiction, what they do is ultra vires." Id. (emphases added). "[T]he question in every case is, simply, whether the statutory text forecloses the agency's assertion of authority, or not." Id. at 1871.

---

would make "explicit findings as to any claimed local distribution exclusions." Respondent's Br. 36.

City of Arlington was decided in the Chevron context.  But the lesson of City of Arlington is that there is no subset of "big, important" jurisdictional questions that require more searching judicial review than "humdrum, run-of-the-mill" questions.  133 S. Ct. at 1868.  That lesson would seem to be equally applicable whether the challenged agency action is statutory interpretation (as in City of Arlington) or the fashioning of procedural rules (as in this case).  In both contexts, "when [agencies] act improperly, no less than when they act beyond their jurisdiction, what they do is ultra vires."  Id. at 1869.

* * *

I concur with the majority that the challenged regulations are entitled to deference and must be upheld; I would deny New York's petition under the principle of deference in Vermont Yankee.

6