# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued November 12, 2021      Decided January 28, 2022

No. 20-1389

COGENTRIX ENERGY POWER MANAGEMENT, LLC AND
VISTRA CORP.,
PETITIONERS

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENTS

NEW ENGLAND STATES COMMITTEE ON ELECTRICITY, INC.,
INTERVENOR

---

On Petition for Review of Orders of the Federal Energy
Regulatory Commission

---

*Christopher R. Jones* argued the cause for petitioners. With him on the briefs were *Miles H. Kiger* and *Jessica Harris Miller*. *Nicholas M. Gladd* entered an appearance.

*Matthew J. Glover*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With him on the brief were *Matthew R. Christiansen*, General Counsel, *Robert H. Solomon*, Solicitor, and *Beth G. Pacella*, Deputy Solicitor. *Anand R. Viswanathan*, Attorney, entered an appearance.

Before: SRINIVASAN, *Chief Judge*, KATSAS, *Circuit Judge*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* RANDOLPH.

RANDOLPH, *Senior Circuit Judge*:  Cogentrix Energy Power Management, LLC and Vistra Corp. own electric generation facilities in New England.  Their petition for judicial review is directed at the Federal Energy Regulatory Commission's orders affecting their facilities.  *ISO New England Inc.*, 171 FERC ¶ 61,160 (2020) ("*Initial Order*"), *on reh'g*, 172 FERC ¶ 61,251 (2020) ("*Rehearing Order*").  Electric generation facilities in this area receive payment for their services through formula rates established by ISO New England Inc.'s open access transmission tariff (the "ISO New England tariff").[1]  The Commission's orders approved Schedule 17, an amendment to the ISO New England tariff.  Schedule 17 established a new recovery mechanism for costs incurred by certain electric generation and transmission facilities to comply with mandatory reliability standards the Commission had approved.

The Commission ruled that Cogentrix and Vistra could use Schedule 17 to recover only costs incurred after they filed a cost-based rate with the Commission pursuant to Federal Power Act ("FPA") § 205, 16 U.S.C. § 824d, and the Commission had approved the rate.  The Commission reasoned that the filed rate doctrine and its corollary, the rule against retroactive ratemaking, limited recovery to prospective costs.

---

[1] ISO New England is a regional transmission organization that coordinates electricity transmission in New England and whose tariff governs recovery of transmission rates. *Emera Me. v. FERC*, 854 F.3d 9, 16 (D.C. Cir. 2017).

3

I.

A.

Congress added electric grid reliability to the Commission's regulatory responsibilities in the Electricity Modernization Act of 2005, Pub. L. No. 109-58, tit. XII, 119 Stat. 941 (2005).[2] The Act created FPA § 215, 16 U.S.C. § 824*o*, which gives the Commission the power to "adopt and enforce mandatory technical reliability standards for facilities that make up the national energy grid." *New York v. FERC*, 783 F.3d 946, 950 (2d Cir. 2015). Congress provided the Commission with this authority in order to enhance the reliability of the electric grid after a large-scale blackout in the northeastern United States in summer 2003. *Id.*

Section 215 does not give the Commission authority to write mandatory reliability standards. Instead, the Commission may certify a non-governmental organization as the "Electric Reliability Organization" to write and propose the standards. 16 U.S.C. § 824*o*(c), (d). The Commission may approve such standards if the Commission finds that the standards are "just, reasonable, not unduly discriminatory or preferential, and in the public interest." *Id.* § 824*o*(d)(2). The North American Electric Reliability Corporation has been the certified Electric Reliability Organization since 2006. *N. Am. Elec. Reliability Corp.*, 116 FERC ¶ 61,062 (2006); Fed. Energy Regul. Comm'n, Reliability Primer 34–35 (2020).

In 2013, the Commission approved a new set of critical infrastructure protection reliability standards the Corporation proposed. *Version 5 Critical Infrastructure Protection*

---

[2] The Electricity Modernization Act is part of the Energy Policy Act of 2005, Pub. L. No. 109-58, 119 Stat. 594 (2005).

*Reliability Standards*, 145 FERC ¶ 61,160 (2013) ("*Reliability Standards*"), *on clarification & reh'g*, 146 FERC ¶ 61,188 (2014) ("*Reliability Standards Clarification Order*"). These new standards require system operators like ISO New England to designate the system's generation and transmission facilities as low-, medium-, or high-impact, based on the facilities' relative importance to the reliable operation of the electric grid. *Reliability Standards*, at PP. 2, 41. All facilities must comply with the low-impact reliability standards. *Id.* at P. 2. Facilities designated as medium- or high-impact must comply with additional reliability standards. *Id.* Medium- and high-impact facilities had to comply with the new standards by April 1, 2016. *Reliability Standards Clarification Order*, at P. 7.

B.

ISO New England started designating transmission and generation facilities as medium-impact facilities in 2013 and 2014, respectively. Those critical facilities[3] began to incur costs to comply with the standards. Cogentrix, Vistra, and other critical facility owners commenced negotiations with ISO New England regarding compensation for those compliance costs. Those discussions resulted in Schedule 17.

Schedule 17 amends the ISO New England tariff to include a cost-based recovery mechanism for expenses that critical facility owners incur to comply with the new standards. A facility may recover costs under Schedule 17 "only to the extent" that it satisfies four conditions. Schedule 17 § 2.2(A), J.A. 61. First, the costs must be "incurred . . . during the period in which the subject facility is designated as [a] []Critical

---

[3] Like the parties, we use "critical facilities" to refer to electric generation and transmission facilities that are designated by ISO New England as medium-impact facilities.

Facility" by ISO New England. *Id.* § 2.2(A)(i). Second, the critical facility owner must specify a cost recovery period and the costs must have been paid during that period. *Id.* § 2.2(A)(ii). Third, the costs must be "presented by the []Critical Facility Owner in a Section 205 filing and approved by the Commission." *Id.* § 2.2(A)(iii). Fourth, the costs must "satisfy all other conditions for recovery, as set forth in this Schedule 17." *Id.* § 2.2(A)(iv).

On January 6, 2020, ISO New England filed Schedule 17 with the Commission with a requested effective date of March 6, 2020.[4] The Commission had concerns about the temporal scope of cost recovery permitted by Schedule 17 § 2.2(A)(i), so the Commission filed a deficiency letter. In the letter, the Commission asked ISO New England whether it "intends to allow the recovery of costs incurred prior to the requested effective date" of Schedule 17 and, if so, to "explain how this cost recovery mechanism would be consistent with the filed rate doctrine and the rule against retroactive ratemaking." J.A. 132.

ISO New England responded that Schedule 17 § 2.2(A)(i) "does not address the recovery of [mandatory reliability costs] incurred prior to [Schedule 17's] requested effective date of March 6, 2020." *Id.* at 135. ISO New England explained that the critical facility owners bear the burden in their individual FPA § 205 filings to "demonstrate that the costs proposed for recovery . . . are consistent with the filed rate doctrine and the rule against retroactive ratemaking." *Id.* at 134.

The Commission thereafter approved Schedule 17. Pursuant to the filed rate doctrine and the rule against retroactive ratemaking, the Commission limited recovery to "those costs

---

[4] A new rate cannot become operative until sixty days after it is filed with the Commission. 16 U.S.C. § 824d(d).

incurred on or after the effective date of the [critical facility owner's] relevant individual FPA section 205 filing." *Initial Order*, at P. 27. The Commission clarified on rehearing that critical facility owners may include in their section 205 filings the "undepreciated" portion of "such past capital expenditures to comply with the . . . requirements." *Rehearing Order*, at P. 22.

## II.

The filed rate doctrine forbids utilities from charging rates other than those properly filed with the Commission. *Towns of Concord, Norwood, & Wellesley v. FERC*, 955 F.2d 67, 71 (D.C. Cir. 1992) (citing *Ark. La. Gas Co. v. Hall*, 453 U.S. 571, 577 (1981)). A "corollary" to the filed rate doctrine is the rule against retroactive ratemaking, which "prohibits the Commission from adjusting current rates to make up for a utility's over- or undercollection in prior periods." *Id.* at 71 & n.2.

## A.

Cogentrix and Vistra argue that Schedule 17 "expressly permits" recovery of previously paid costs to comply with the mandatory reliability standards. Petitioners' Br. 30. We agree with the Commission that Schedule 17 "expressly permits" no such thing.

As discussed above, Schedule 17 has four conditions critical facility owners must satisfy in order to recover compliance costs. The first and third conditions are relevant here: costs must be "incurred . . . during the period in which the subject facility is designated as [a] []Critical Facility," and must be "presented by the []Critical Facility in a Section 205 filing and approved by the Commission." Schedule 17 § 2.2(A)(i), (iii),

J.A. 61.

Cogentrix and Vistra argue that the only temporal limit Schedule 17 places on cost recovery is that the costs are incurred when a facility is designated as a medium-impact facility by ISO New England. The Commission disagreed. It read Schedule 17 to neither "address whether facility owners may seek to recover costs incurred prior to the effective date of the relevant individual FPA section 205 filing" nor "explicitly state that only prospective costs (i.e., costs from the effective date of the individual FPA section 205 filings going forward) are eligible for recovery." *Rehearing Order*, at PP. 5, 26. In other words, the Commission found that Section 17 does not address whether costs incurred before the effective date of the critical facility's FPA § 205 filing can be recovered.

Cogentrix and Vistra ignore Schedule 17's third requirement, namely that recovery is limited to costs presented in a facility's individual FPA § 205 filing and approved by the Commission. The Commission reasonably concluded that this requirement preserves the filed rate doctrine and the rule against retroactive ratemaking, because the Commission may not accept a rate filed under FPA § 205 that would violate those doctrines. *Initial Order*, at P. 27 (citing *Towns of Concord*, 955 F.2d at 71 n.2, 75); *see also Old Dominion Elec. Coop. v. FERC*, 892 F.3d 1223, 1226–27 (D.C. Cir. 2018). Given the tariff's third requirement for cost recovery, we cannot say that Schedule 17 expressly permits recovery of mandatory reliability costs incurred prior to a facility's individual FPA § 205 filing.[5]

---

[5] As the Commission points out, ISO New England "in its own filing acknowledged tariff ambiguity as to the timing of cost recovery." Respondent's Br. 25. At oral argument, Cogentrix and Vistra asserted that after the Commission filed its deficiency letter, they "had a good-faith assumption and basis to conclude" that they

B.

Cogentrix and Vistra next contend that the Commission's application of the filed rate doctrine and the rule against retroactive ratemaking to Schedule 17 is contrary to FPA § 219. *See* 5 U.S.C. § 706(2)(A). They point to section 219(b)(4)(A), which directs the Commission to create a rule that "allow[s] recovery of . . . all prudently incurred costs necessary to comply with mandatory reliability standards."[6]    16 U.S.C. § 824s(b)(4)(A). In their view, if the costs were "prudently incurred," section 219(b)(4)(A) imposes no temporal limitation on recovery of said costs.

But as Cogentrix and Vistra recognize, section 219(d) imposes two limitations on the recovery of mandatory reliability costs. Specifically, the statute requires that "[a]ll rates approved under the rules adopted pursuant to this section . . . are subject to the requirements of sections 824d [FPA § 205] and 824e [FPA § 206] of this title that all rates, charges, terms, and

---

"could convince [ISO New England] to include past costs" in Schedule 17. Oral Arg. 37:2–6. ISO New England did not adopt their view, and told the Commission that "Schedule 17 does not address the recovery of [mandatory reliability costs] incurred prior to . . . March 6, 2020," the requested effective date of Schedule 17. J.A. 135. The fact that ISO New England did not think that Schedule 17 — which is part of the ISO's own tariff — unambiguously covered prior costs strongly counsels against the contrary "unambiguous" reading Cogentrix and Vistra now advance.

[6] Pursuant to this statutory directive, the Commission adopted 18 C.F.R. § 35.35(f), which provides that the "Commission will approve recovery of prudently-incurred costs necessary to comply with the mandatory reliability standards pursuant to section 215 of the Federal Power Act, provided that the proposed rates are just and reasonable and not unduly discriminatory or preferential."

conditions be just and reasonable and not unduly discriminatory or preferential." *Id.* § 824s(d). The Commission determined that when FPA § 219(b)(4)(A) and 219(d) are read together, the statute directs the Commission to allow for recovery of "'all' [mandatory reliability] costs when consistent with FPA section 205," which "include[s] the prohibition against retroactive rate recovery." *Rehearing Order*, at P. 15.

Cogentrix and Vistra challenge that reading by invoking the negative-implication canon — the "expression of one thing implies the exclusion of others (*expressio unius est exclusio alterius*)." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 107 (2012). They argue that the filed rate doctrine and the rule against retroactive ratemaking do not derive from the requirements in FPA § 205(a) and (b) that rates be just and reasonable and not unduly discriminatory. *See* 16 U.S.C. § 824d(a)–(b). Rather, Cogentrix and Vistra maintain that the doctrines originate from FPA § 205(c), (d), and (e). Those respective sections require that public utility rates be filed with the Commission and available for public inspection; that utilities provide sixty days' notice of a change in rates; and that the Commission has the authority to hold a hearing about the legality of a rate and suspend the rate while its legality is decided. *See id.* § 824d(c)–(e).

We have consistently held that the *expressio unius* "canon has little force in the administrative setting" to establish unambiguous intent under step one of *Chevron U.S.A. Inc. v. NRDC*, 467 U.S. 837 (1984). *Tex. Rural Legal Aid, Inc. v. Legal Servs. Corp.*, 940 F.2d 685, 694 (D.C. Cir. 1991); *see Nat'l Ass'n of Mfrs. v. SEC*, 800 F.3d 518, 550 (D.C. Cir. 2015). And we are not persuaded that the canon does the work that Cogentrix and Vistra would like here. This court and the Supreme Court have recognized repeatedly that the filed rate doctrine and the rule against retroactive ratemaking play an

important role in helping the Commission fulfill its statutory responsibility to ensure that regulated entities charge only rates that are just and reasonable. *See Towns of Concord*, 955 F.2d at 71 (citing *Ark. La. Gas Co.*, 453 U.S. at 577–78).

The reasoning goes something like this: the Federal Power Act "vests the Federal Energy Regulatory Commission with responsibility for ensuring that all rates charged by utilities within the Commission's jurisdiction are 'just and reasonable.'" *Id.* at 68 (quoting 16 U.S.C. § 824d(a)). Utilities must file all rates with the Commission. 16 U.S.C. § 824d(c). When a utility seeks to charge a different rate, the utility must file a new rate schedule with the Commission; no rate change "shall be made . . . except after sixty days' notice to the Commission and to the public." *Id.* § 824d(d).

The Commission could not ensure that rates are just and reasonable if the rates are not on file with the Commission for a period of time before the rates go into effect. Therefore, FPA § 205(c) and (d), 16 U.S.C. § 824d(c) and (d) — two of the provisions from which Cogentrix and Vistra assert the filed rate doctrine and the rule against retroactive ratemaking derive — require that "regulated utilities . . . file with the Commission and keep open for public inspection a schedule of the rates they intend to charge ratepayers." *Old Dominion*, 892 F.3d at 1226. Those provisions "effectuate" the Commission's statutory responsibility to ensure that all rates are just and reasonable. *Id.*; *see also Mont.-Dakota Utils. Co. v. Nw. Pub. Serv. Co.*, 341 U.S. 246, 251 (1951) ("[T]he right to a reasonable rate is the right to the rate which the Commission files or fixes . . .."). FPA § 219's requirement that mandatory reliability costs be "just and reasonable" therefore incorporates the filed rate doctrine and the rule against retroactive ratemaking. Congress did not exclude the Commission's application of the doctrines for costs recovered under FPA § 219.

This reading of FPA § 219 accords with the Commission's implementing regulation, 18 C.F.R. § 35.35. Like FPA § 219, the regulation specifies that the Commission will "approve recovery of prudently-incurred costs necessary to comply with the mandatory reliability standards . . . provided that the proposed rates are just and reasonable and not unduly discriminatory or preferential." 18 C.F.R. § 35.35(f). But in addition to these substantive requirements, the regulation also incorporates the procedural filing rules in FPA § 205(c) to (e). *See id.* § 35.35(c) (section 219 rates are "subject to the *filing* requirements of sections 205 and 206 of the Federal Power Act *and* to the *substantive* requirements of sections 205 and 206" (emphases added)). The regulation thus incorporates the filed rate doctrine and the rule against retroactive ratemaking by applying all of section 205's requirements to any rate filings seeking recovery for costs to comply with the mandatory reliability standards.

## C.

Cogentrix and Vistra also maintain that the Commission's orders are arbitrary and capricious because the Commission misapplied the rule against retroactive ratemaking here. *See* 5 U.S.C. § 706(2)(A). Their argument is that the rule against retroactive ratemaking does not apply because there was no rate on file for medium-impact reliability costs prior to Schedule 17.

True, the Commission has explained that "[f]or there to be retroactive ratemaking or a violation of the filed rate doctrine . . . there must first be a rate on file." *Niagara Mohawk Power Corp.*, 111 FERC ¶ 61,120, at P. 46 (2005). But that does not help Cogentrix and Vistra. As the Commission explained, Cogentrix and Vistra are attempting to collect additional rates "for a service that has already been rendered," which would be a violation of the rule against retroactive

ratemaking.  *Rehearing Order*, at P. 20.  Cogentrix and Vistra had a rate on file for their generation facilities in the ISO New England Tariff, and their customers and the service provided were the same before and after the Commission approved Schedule 17.  *Id.* at P. 19.  Schedule 17 was thus a changed rate, not a new rate.  *Id.*

Cogentrix and Vistra argue that the Commission's orders are contrary to the Commission's typical use of historical costs to set current rates.  *See, e.g.*, *PJM Interconnection, LLC*, 172 FERC ¶ 61,054, at P. 58 (2020) ("Longstanding practice, Commission and court precedent allow the use of reasonably representative historic test period data to craft rates, terms and conditions of service.").  But in this proceeding, Cogentrix and Vistra were not looking to set a new rate by using historical costs to estimate future costs.  Rather, they were seeking to recover historical costs going back to 2014 through an adjustment to current transmission rates.  Petitioners' Br. 19–20 (noting that critical facility owners have been harmed because they "incurred approximately $300,000 to $2.1 million in initial costs" and "approximately $700,000 - $5.3 million in compliance costs through 2019").[7]  The rule against retroactive

---

[7] The Commission's brief uses the example of a software license — one Schedule 17-qualifying cost — to explain the problem with the arguments of Cogentrix and Vistra:

> Cogentrix [and Vistra] do[] not seek to use the cost of a software license . . . that was used when providing service in the past to estimate the cost of a software license for a future period.  Rather, [they] seek[] to charge future ratepayers for the cost of that past software license, an attempt to recover for under-collection for service provided in the past.

Respondent's Br. 29.

ratemaking prohibits such cost recovery, because it would cause an increase in "current rates to make up for a utility's . . . undercollection in prior periods." *Towns of Concord*, 955 F.2d at 71 n.2. Under the FPA, the "Commission has no authority . . . to allow retroactive change in the rates charged to consumers." *Old Dominion*, 892 F.3d at 1226. Cogentrix and Vistra received transmission rates under the ISO New England tariff during the relevant period. That the companies failed to recover mandatory reliability costs does not allow an exception to the rule against retroactive ratemaking.

Cogentrix and Vistra also seek to benefit from this exception to the filed rate doctrine: "The filed rate doctrine simply does not extend to cases in which buyers are on adequate notice that resolution of some specific issue may cause a later adjustment to the rate being collected at the time of service." *Nat. Gas Clearinghouse v. FERC*, 965 F.2d 1066, 1075 (D.C. Cir. 1992) (per curiam). This is not because notice "relieve[s] the Commission from the prohibition against retroactive ratemaking," but that "it changes what would be purely retroactive ratemaking into a functionally prospective process by placing the relevant audience on notice at the outset that rates being promulgated are provisional only and subject to later revision." *Columbia Gas Transmission Corp. v. FERC*, 895 F.2d 791, 797 (D.C. Cir. 1990).

The notice exception "permits the filing of tariffs that provide a formula for calculating rates, rather than a specific rate number." *W. Deptford Energy, LLC v. FERC*, 766 F.3d 10, 22 (D.C. Cir. 2014). The exception also applies "when judicial invalidation of Commission decisions has resulted in retroactive changes in rates." *Id.*

Cogentrix and Vistra want the exception expanded to cover

statutes and regulations that permit cost recovery.[8] They point out that FPA § 219 directs the Commission to "allow recovery of . . . all prudently incurred costs necessary to comply with mandatory reliability standards," 16 U.S.C. § 824s(b)(4)(A), and that 18 C.F.R. § 35.35(f) provides the same. But all rate changes seeking to recover costs must be filed with the Commission. 16 U.S.C. § 824d(d); *Old Dominion*, 892 F.3d at 1232. For this reason, statements on a website or in pleadings in litigation do not come within the notice exception. *See Old Dominion*, 892 F.3d at 1232; *W. Deptford Energy*, 766 F.3d at 23–24. Perhaps statutes and regulations are different, perhaps not. Like the Commission, we do not decide that here. *See Rehearing Order*, at P. 17. As shown above, neither section 219 nor its implementing regulation provides that rates may be adjusted retroactively.

According to Cogentrix and Vistra, the Commission's ruling that Schedule 17 does not provide adequate notice is contrary to *NSTAR Electric & Gas Corp. v. FERC*, 481 F.3d 794 (D.C. Cir. 2007). *NSTAR* affirmed the Commission's determination that notice was met by Market Rule 17, which provided that tariff rates would apply only if ISO New England and the electricity generator did not later file a separate negotiated agreement for recovery of generators' operating costs during congestion periods. *Id.* at 801. Cogentrix and Vistra contend that Schedule 17 is "identical" to Market Rule 17. Petitioners' Br. 37. The Commission, however, reasonably explained that Schedule 17 "provided notice only of a potential change to be proposed in potential future filings." *Rehearing Order*, at P. 18. Market Rule 17 "put transmission customers on

---

[8] Cogentrix and Vistra admit that they "are not aware of an instance in which this Court has found that a statute or regulation expressly permitting cost recovery provides adequate notice." Petitioners' Br. 34.

notice that the default rates" in the tariff "would apply only absent a separate negotiated agreement," which "may have retroactive effect." *NSTAR*, 481 F.3d at 801. Market Rule 17 thus established that the filed rates were "provisional only and subject to later revision." *Id.* (quoting *Columbia Gas*, 895 F.2d at 797). In contrast, notice that critical facilities seek to recover Schedule 17-qualifying costs will be provided at the time of critical facilities' FPA § 205 filings, not at the filing of Schedule 17 itself.

We conclude that the Commission's application of the filed rate doctrine and the rule against retroactive ratemaking to Schedule 17 was not arbitrary or capricious.[9]

*Petition Denied.*

---

[9] The remaining arguments of Cogentrix and Vistra do not warrant discussion and are rejected.